IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON SMITH, | : | |
| | : | |
| Plaintiff | : | Case No. 4:04cv937 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| PHOENIX CARDIOVASCULAR, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**July 19, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Summary Judgment (doc. 19) ("the Motion"), filed by Defendant Phoenix Cardiovascular, Inc. ("Defendant" or "PCI") on April 7, 2005. For the reasons that follow, the Motion will be granted.

**PROCEDURAL HISTORY:**

Plaintiff Sharon Smith ("Plaintiff" or "Smith") initiated this action by filing a complaint in the United States District Court for the Middle District of Pennsylvania on April 28, 2004. (See Rec. Doc. 1). The Complaint is set forth in two counts and was filed pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43

P.S. § 955(a). Count I of the complaint asserts a violation of the ADEA and Count II asserts a violation of the PHRA.

The Motion pending before the Court, filed on April 7, 2005, has been fully briefed and is ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986). It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)(citations omitted).

**STATEMENT OF RELEVANT FACTS:**

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, the Plaintiff, in our analysis of the pending Motion.

Smith is a white female who was born on April 22, 1957 and began

employment with PCI on June 26, 2000. Smith was employed as a site administrator for PCI at its vascular lab at Mercy Hospital in Scranton, Pennsylvania. Smith's immediate supervisor was Elizabeth Calpin ("Calpin"), who was Regional Supervisor of Operations from March 2001 until January 2004. Calpin prepared Smith's first performance evaluation, covering the time period of June 26, 2000 to June 26, 2001, in which Smith received 47 out of a possible 50 points. In her second evaluation, covering the time period of June 26, 2001 to June 26, 2002, also prepared by Calpin, Smith received 32.2 out of a possible 50 points. Smith was terminated on either September 26, 2002 or September 27, 2002.[1] At the time of Smith's termination, five of the six site administrators in the Pennsylvania region were older than 40 years of age. Two were older than Smith and one was one month younger than Smith. After Smith was terminated, Audra Kaspriski ("Kaspriski") replaced her, who was 32 years of age at the time.

On October 20, 2003, the Pennsylvania Human Relations Commission ("PHRC") issued a finding of no probable cause of discrimination. The PHRC found that Plaintiff was selected for discharge based upon poor performance and not age. (See Rec. Doc. 19, Ex. M).

[1] Although the parties dispute Smith's date of termination, resolution of this issue is not material to the outcome of the Motion.

**DISCUSSION:**

We preliminarily note that the Third Circuit Court of Appeals has explained that in an employment discrimination case, "a trial court must be cautious about granting summary judgment to an employer when...intent is at issue." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000)(citing Gallo v. Prudential Residential Services Ltd. P'ship, 22 f.3d 1219, 1224 (2d Cir. 1994)). Therefore, notwithstanding the non-moving party's burden, the Third Circuit urges special caution about granting summary judgment to an employer when its intent is at issue, particularly in discrimination cases. See Gerhart v. Boyertown Area Sch. Dist., 2002 U.S. Dist. LEXIS 11935, * 19 (E.D. Pa. 2002).

Plaintiff asserts that Defendant violated the ADEA and the PHRA. The ADEA makes it "unlawful for an employer...to fail to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Tyrrell v. City of Scranton, 134 F.Supp.2d 373, 377 (M.D. Pa. 2001)(citing 29 U.S.C. § 623(a)(1)). Similarly, the PHRA prohibits employment discrimination on the basis of enumerated personal characteristics, including age. Id. (citing 43 P.S. § 954(a)). "Because Title VII, the ADEA, and the PHRA have similar purposes and contain parallel provisions, courts use judicial interpretations

of Title VII to interpret the ADEA, and in turn use interpretations of both federal statutes in interpreting the PHRA." Id. (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)); see also Connors v. Chrysler Financial Corp., 160 F.3d 971, 972 (3d Cir. 1998)("There is no need to differentiate between Connors's [sic] ADEA and PHRA claims because, for our purposes, the same analysis is used for both.").

To prevail on an ADEA termination claim, a plaintiff must show that his or her age "actually motivated" and "had a determinative influence on" the employer's decision to fire him or her. Fakete v. Aetna, Inc., 308 F.3d 335, 337-38 (3d Cir. 2002)(citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). An ADEA plaintiff can meet this burden by (1) presenting direct evidence of discrimination, or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See id. (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)(*en banc*)).

We will address direct evidence cases of discrimination and indirect evidence cases of discrimination in turn.

**A. Direct Evidence of Discrimination**

The Supreme Court has instructed that in a direct evidence case, the plaintiff must product "direct evidence that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Duffy v. Halter, 2002 WL 1933236, *1 (E.D. Pa. 2002)(quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989)). For purposes of the Price Waterhouse test, evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on Plaintiff's age in reaching their decision, which means that Plaintiff must produce evidence of discriminatory attitudes about age that were causally related to the decision to fire her. Glanzman v. Metropolitan Management Corp., 2004 WL 2861166, *5 (3d Cir. 2004).

Plaintiff asserts that substantial questions of material fact exist as to every reason given for her termination, with substantial evidence inferring that age discrimination motivated her termination. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 15). "Such inconsistencies infer that none of the reasons are credible, with the real motivation for termination being age." Id. at 1. Defendant argues that there is no evidence of direct discriminatory conduct and points out that Plaintiff admitted that she has no direct evidence of discrimination in her deposition. (See Rec. Doc. 19, Ex. I (Smith depo.) at 66). Moreover, Defendant maintains that Plaintiff has come

forward with no documentary or testimonial evidence, other than her own subjective beliefs, that the decision makers at PCI placed substantial negative reliance on an illegitimate criterion, her age, in reaching its decision. Id. at 64; see also Def.'s Br. Supp. Mot. Summ. J. at 8-9.

We are in agreement with Defendant and conclude that Plaintiff has failed to provide the evidence necessary to support the direct evidence theory of discrimination. Additionally, we note that in Plaintiff's deposition, in response to the question, "Did anyone ever make disparaging comments concerning your age," Plaintiff responded in the negative. (See Rec. Doc. 19, Ex. I at 66). As Plaintiff has come forward with no evidence of direct discriminatory conduct or statements of the kind necessary to trigger the direct evidence theory, Defendant's Motion is granted with respect to that theory.

**B. Indirect Evidence of Discrimination**

A plaintiff is able to prove discrimination by circumstantial evidence, in the absence of, or in addition to, direct evidence of discrimination pursuant to the McDonnell Douglas burden-shifting analysis. Under the above-referenced McDonnell Douglas burden-shifting analysis, the plaintiff must first produce sufficient evidence to convince a reasonable factfinder of all the elements of a prima facie case of discrimination. Duffy, 2002 WL 1933236, *1 (citing Reeves, 530

U.S. at 142). Once the plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment decision. Id. The defendant bears the burden of production, not persuasion. If and when the defendant satisfies this burden, the presumption of discrimination created by the presentation of a prima facie case "drops out of the picture." Duffy, 2002 WL 1933236, *1 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993)). Plaintiff must then submit evidence from which a factfinder could find that the defendant's allegedly legitimate reason was a pretext for discrimination. "In order to demonstrate pretext, the Plaintiff must convince the factfinder that the defendant's articulated legitimate reasons were false and an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Duffy, 2002 WL 1933236, *1 (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

To prove a prime facie case of discrimination, Plaintiff must establish the following, that: (1) she is over 40 years old; (2) she is qualified for the position in question; (3) she suffered an adverse employment decision; and (4) her replacement was sufficiently younger to permit an inference of age discrimination. Joseph v. First Judicial Dist. of Pa., 1999 WL 79056, *3 (E.D. Pa. 1999). The Third Circuit Court of Appeals has instructed that in a reduction in force ("RIF") case, the fourth

element is satisfied by showing that the employer retained a "sufficiently younger" employee who was "similarly situated" to the plaintiff. Anderson v. Consolidated Rail Corp., 297 F.3d 242, 249-50 (3d Cir. 2002).

Drawing all necessary inferences in the light most favorable to the Plaintiff, Defendant states that it concedes that Plaintiff has made out a prima facie case of discrimination. (See Def.'s Br. Supp. Mot. Summ. J. at 10). We therefore conclude that Plaintiff has satisfied her burden of establishing a prima facie case of discrimination and the burden shifts to Defendant to offer adequate evidence of a legitimate, non-discriminatory reason for its action. Connors, 160 F.3d at 974 n.2 (citing Keller, 130 F.3d at 1108).

We initially note that Defendant asserts that it has articulated legitimate non-discriminatory reasons for Smith's lay-off. PCI argues that it decided to reduce the number of site administrators by one and made the decision to terminate Smith's employment because the Mercy Scranton site, for which Plaintiff was responsible, had significantly higher billing error rates than any other site, and because of her lower evaluation scores relative to her peers. (Def.'s Br. Supp. Mot. Summ. J. at 10-11).

As previously stated, Smith argues that numerous questions of material fact exist as to the reasons for her termination proffered by PCI which require that the

Motion be denied. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 8). Additionally, Smith asserts that while this supports the inference of age discrimination as the basis of her termination, PCI's own conduct in more favorably treating younger employees similarly situated to her, as well as failing to follow its own employment policies with regard to any allegations of poor performance, further support that she was discriminated against solely because of her age. Id. at 14-15.

For the reasons that follow, we find that a RIF is a legitimate non-discriminatory reason for laying off an employee and that Plaintiff has failed to submit evidence from which a factfinder can determine that Defendant's legitimate reasons given for Plaintiff's termination were pretextual. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000); Fuentes, 32 F.3d at 763.

After a careful review of the record, we are in agreement with Defendant's categorization of Plaintiff's purported genuine issues of material fact, which can be summarized as follows:

1. Kaspriski was less qualified than Smith, and therefore should have been terminated instead of Smith.
2. There is a significant disparity between the positions of "floating site administrator" and "site administrator."
3. Smith was not terminated as part of a RIF.

4. PCI used illegitimate criteria in deciding to terminate Smith.

Def.'s Reply Br. Supp. Mot. Summ. J. at 2. We will discuss Plaintiff's alleged purported genuine issues of material fact in turn.

First, Smith argues that a genuine issue of material fact exists regarding Kaspriski and whether Smith should have been retained instead of Kaspriski. Smith contends that she trained Kaspriski, who was 32 years of age at the time and was not terminated, that she had more seniority than Kapriski, and therefore that Kaspriski should have been laid-off instead of Smith. We are in agreement with Defendant that Smith's contention is misplaced because the ADEA is not a "bumping statute." Accordingly, a "plaintiff cannot prevail merely by pointing to other positions for which [she] was qualified and claim that the employer should have allowed [her] to 'bump' the occupant of that position." Anderson, 297 F.3d at 250 (quoting Shalka v. Fernald Environmental Restoration Management, 178 F.3d 414, 421 (6th Cir. 1999)). In addition, as Defendant submits, a court "does not sit as a super-personnel department that reexamines an entity's business decisions." McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992). Moreover, the record reflects that Kaspriski was well-qualified for the position and that her performance score on her 2002 evaluation was significantly

higher compared to that of Smith's performance score.[2]

Consequently, other than Smith's subjective perception of her own performance compared to Kaspriski's, we find that Smith has no basis to challenge PCI's reliance upon the performance evaluations in aiding its determination to dismiss Smith over Kaspriski. We conclude that there is no genuine issue of material fact that exists regarding Kaspriski and whether Smith should have been retained instead of Kaspriski.

Second, the issue of whether or not PCI permanently eliminated the "floater" site administrator position is not meaningful to Smith's claim of age discrimination in the case sub judice. Initially we note that a floating site administrator required greater knowledge and flexibility than one assigned to a permanent site and was required to know how to run each of the sites within the region, as opposed to only one. Plaintiff argues that Susan Dorfman ("Dorfman"), Vice President of Operations at the time, stated that it was decided to permanently place the floater site administrator at Plaintiff's location and not to replace the floater position; however, in February 2003 Lori Fiorelli ("Fiorelli"), who was four years younger

[2] We note that Kaspriski's 2002 performance evaluation was 4.58 out of 5, as contrasted to Smith's score of 3.2. Kaspriski outscored Smith in several areas, including, but not limited to quality of work, knowledge of work, job judgment, amount of work, and initiative. (See Rec. Doc. 19, Exs. L, P and S).

than Plaintiff, was offered the floater position, despite its supposed permanent elimination. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 8-9). Defendant asserts however that permanent elimination of a "floater" position was not part of the consideration as to which site administrator to let go and that Kaspriski continued to cover for the other sites when there was a need and thus continued to "float" after Smith's termination. (Def.'s Reply Br. at 5). Moreover, Defendant submits that Fiorelli was offered a floater position some time after Smith's termination when PCI lost its contract with Marian, one of the two sites she covered.

Even viewing all inferences in the light most favorable to the Plaintiff, we do not find there to be a genuine issue of material fact as to whether offering the floater position to Fiorelli five months after Smith's termination, despite the fact that Dorfman stated that it was decided to permanently place the floater site administrator at Plaintiff's location and not to replace the floater position, demonstrates that age discrimination was the reason for Plaintiff's termination.

Third, Plaintiff argues that a genuine issue of material fact exists with regard to whether she was terminated as part of a RIF. Plaintiff contends that the alleged RIF, of which no substantiating documentation exists and which produced none of the intended affects, can be deemed a pretext for her termination considering the fact that the consultant who implemented the reorganization did not recommend

that any site administrator be eliminated. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. At 8-9).

PCI has consistently explained its reasons for termination of Smith. PCI determined that it could reduce its staff by one full-time equivalent site administrator in the region and once that decision was made, Smith was selected among her peers based upon the following two legitimate criteria: her significantly higher billing error rate and the fact that she had the lowest performance evaluation. First, regarding the billing errors, Smith does not dispute that the statistical evidence confirms that the Mercy Scranton site had the highest percentage of billing errors among PCI's Pennsylvania sites, by a factor of approximately 3.5 times over the next highest site for demographic errors, and by approximately 6 times the next highest site for insurance errors. (See Rec. Doc. 19, Ex. R). In her deposition, Smith concedes that the billing errors were much higher at the Mercy Scranton site than at the other sites and testified that she had no basis to dispute the accuracy of the billing error report. Id. at Ex. I, at pp. 81-82. Second, regarding the performance evaluation, Plaintiff failed to even acknowledge that hers was low and instead testified that her performance was "excellent." Id. at pp. 13-14; see Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998)(explaining that a claimant's "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of

pretext”). Additionally, there is no assertion that the evaluation system used by PCI was discriminatory or otherwise flawed and the evaluation was completed in June 2002, at least two months prior to PCI’s decision to reduce its force by one. Finally, the fact that Smith was the first individual terminated and that there was no documented “plan” in place regarding future cut-backs with PCI, lends no support to an inference of discrimination in this case.

We therefore find that Smith’s termination resulted from PCI’s decision that it could operate with one less site administrator in the region and Smith was selected among her peers based upon her performance in comparison with them.

Fourth, Smith argues that a genuine issue of material fact exists regarding whether PCI used illegitimate criteria in deciding to terminate her. Although Plaintiff argues that PCI failed to follow its employment policies with regard to any allegations of poor performance by Plaintiff and asserts a lack of forewarning that she could be terminated, PCI does not contend that Plaintiff was terminated for misconduct and grants Plaintiff the inference that she was qualified to keep her job. Moreover, as Defendant submits, Smith was an at-will employee, subject to termination at any time, without warning. Despite the fact that some of the issues regarding Smith’s difficulties with PCI were eventually corrected once addressed, the totality of her decline in performance, evidenced by the afore-mentioned billing

errors and the most recent performance evaluation, led to her termination. Smith has come forward with no evidence to refute this and has produced no evidence to support for claim of discrimination.[3] As Defendant points out and we previously explained, the ADEA protects employees from discrimination on account of their age, it does not guarantee a job to those in the protected class and the ADEA is not a "bumping statute," requiring employers to bump younger workers from their jobs to protect the positions of older workers. Anderson, 297 F.3d at 249.

Therefore, we conclude that RIF is a legitimate non-discriminatory reason for laying off an employee and that Plaintiff has failed to submit evidence from which a factfinder can find that Defendant's legitimate reasons given for Plaintiff's

---

[3] Instead of challenging the figures, Smith attempts to blame others at the Mercy Scranton site who were allegedly responsible for the errors. Although PCI does not dispute that others at Mercy Scranton possibly contributed to the high error rate, the fact remains that Smith was responsible for checking and correcting the errors made by others on her next working day. (See Rec. Doc. 19, Ex. F, at pp. 55, 81-82; see also Ex. I, at pg.134). Plaintiff's job description expressly provided that she was to "Correctly complete and enter all billing information for each patient." (See Rec. Doc. 19, Ex. K). Moreover, as Defendant submits, the Mercy Scranton error rate dramatically decreased subsequent to Smith's termination, when Kaspriski took over primary responsibility for administering the site. (See Rec. Doc. 19, Ex. H).

Although Smith contends that the billing error metric was unfair since the Marian and Tyler Memorial Hospital sites were not considered, this ignores the uncontradicted evidence that the decision over whom to eliminate boiled down to a choice by PCI between Plaintiff and the Moses-Taylor administrator, Joann Artabane ("Artabane") and the deciding factor was the number of billing errors. Additionally, we note that as the PHRC found in an investigation of this case, the billing at Tyler was performed by hospital personnel, so PCI would not have the data to create billing error statistics at that site and while it is accurate that there were no statistics for Marian, covered by Fiorelli, PCI was confident that the numbers were low based upon the close supervision and participation in running that site by the physician, Dr. Larkin. (See Rec. Doc. 19, Ex. E). We therefore find no merit to Plaintiff's contention that the billing error metric was unfair.

termination were pretextual. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000); Fuentes, 32 F.3d at 763. Plaintiff's claim of age discrimination therefore fails and Defendant's Motion for Summary Judgment is granted.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (doc. 19) is GRANTED.
    a. Defendant's Motion is granted with respect to Plaintiff's direct evidence theory of discrimination.
    b. Defendant's Motion is granted with respect to Plaintiff's indirect evidence theory of discrimination.
2. The Clerk shall close the file on this case.

s/ John E. Jones III
John E. Jones III
United States District Judge